# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MELISSA GIBBS,<br>*Administratrix of Estate*<br>*of Bryan Stukes et al.,*<br>*Plaintiff,*<br><br>v.<br><br>CHRISTOPHER BORONA *et al.,*<br>*Defendants.* | No. 3:16-cv-00635 (JAM) |

## ORDER RE MOTIONS *IN LIMINE*

This case involves federal and state law claims arising from a police detective's shooting and killing of a man in Bridgeport, Connecticut. In this ruling I address the parties' multiple pending motions *in limine* with respect to evidence and argument at trial.

### BACKGROUND

On the night of April 1, 2013, Detective Christopher Borona of the Bridgeport police department shot and killed a young man named Bryan Stukes. The parties strongly disagree about the circumstances of this shooting and the reasonableness of Detective Borona's actions.

Plaintiff Melissa Gibbs is Stukes's mother, and in her capacity as administratrix of his estate she has filed this lawsuit against Detective Borona and the City of Bridgeport. I have previously denied Detective Borona's motion for summary judgment, concluding that a genuine issue of fact remains as to whether he used excessive force and whether he is entitled to qualified immunity. *See Gibbs v. City of Bridgeport*, 2018 WL 4119588 (D. Conn. 2018). I concluded in relevant part that a genuine fact issue remains whether "Detective Borona knew that Stukes was no longer armed when he fired the shot that killed him," and that "[i]f plaintiff can prove at trial that Detective Borona knew he was shooting an unarmed man, then plaintiff should be permitted to try to convince the jury that the decision to shoot Stukes was objectively unreasonable in

violation of the Fourth Amendment, and the Court in turn may consider anew in light of the trial

evidence and jury findings whether Detective Borona should be entitled to qualified immunity."

*Id.* at *1.

The case is now scheduled for jury trial in October 2021. The claims against Detective

Borona include one count under 42 U.S.C. § 1983 for the use of excessive force in violation of

the Fourth Amendment as well as state law claims for negligence and recklessness. The claims

against the City are for municipal liability under Conn. Gen. Stat. § 52-577n(a)(1) and

indemnification pursuant to Conn. Gen. Stat. § 7-465.

## DISCUSSION

The parties have filed motions *in limine*, and I will address each one in turn. By way of

background, I note that most of the motions seek preclusion of evidence or argument on the

ground that such evidence or argument is not relevant or unfairly prejudicial. Rule 402 of the

Federal Rules of Evidence allows for the admission of relevant evidence, and Rule 401 in turn

defines evidence to be "relevant" if "it has any tendency to make a fact more or less probable

than it would be without the evidence," and if "the fact is of consequence in determining the

action." Fed. R. Evid. 401. In addition, "[t]he court may exclude relevant evidence if its

probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence." Fed. R. Evid. 403.

### Motion to preclude defendant's expert

Gibbs moves to preclude the testimony of defense expert Kimberly Crawford. Doc. #155.

Having reviewed Crawford's expert report (Doc. #155-1), it is clear to me that most of what she

says would not be properly admissible at trial. First, Crawford repeatedly purports to give her

"expert" opinion about what Detective Borona knew, believed, or concluded. This is improper as even Detective Borona's response concedes. Crawford has no "expert" basis to know what Detective Borona knew or was thinking when he shot Bryan Stukes. Moreover, "expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702." *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005)

Second, Crawford proposes to testify about what is permissible under the Fourth Amendment and decisions of the U.S. Supreme Court. Indeed, Crawford touts her law degree and pronounces that the very "purpose" of her report is to "review the use of deadly force" by Detective Borona "from the perspective of the United States Constitution," and she states in her final conclusion that "[i]t is my opinion that Detective Borona's actions were reasonable within the dictates of the Fourth Amendment and decisions of the United States Supreme Court." Doc. #155-1 at 2, 9. But no matter how experienced Crawford may be as a law enforcement agent, Crawford may not testify on any ultimate legal conclusion about whether the use of force was constitutionally reasonable.

Although it is true that an expert opinion "is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704, the Second Circuit has made clear that it is not proper for expert testimony on an ultimate *legal* conclusion or that does so by communicating a *legal* standard—explicit or implicit—to the jury. *See Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992). Thus, for example, the Second Circuit has found error in a police-excessive-force case for an expert to testify that the officer's "conduct was not 'justified under the circumstances,' not 'warranted under the circumstances,' and 'totally improper.'" *Id.* at 364. Similarly, "an expert's testimony that a defendant was 'negligent' should not have been allowed." *Ibid.*

3

To be sure, the prohibition on expert testimony about the law is not absolute, because an expert may properly testify on "background legal concepts and related practices [that] are important to the jury's determination of facts," and "[t]his is especially true where there are background or subsidiary principles of law that may govern or influence the parties' conduct but that are not directly at issue with respect to the law that will form the basis for final jury instructions." *Coan v. Dunne*, 2019 WL 2169879, at *1 (D. Conn. 2019) (allowing expert testimony about background concepts of Irish real estate law for purposes of trial concerning bankruptcy fraud).

Here, by contrast, Crawford proposes to testify about the Fourth Amendment law that is an ultimate legal issue for the jury to determine in this case. And "expert testimony is not admissible under Federal Rule of Evidence 702 if it usurps the role of the jury in applying the law to the facts before it, as such testimony undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017) (internal citations, quotations, brackets, and ellipses omitted). That is precisely what Crawford declares the "purpose" of her testimony is to do. Her report is essentially a lawyer's closing argument masquerading as an expert report.

Moreover, Crawford's report is replete with conclusions for which there has been no showing that the jury needs any help from an expert. As the Second Circuit has explained, "expert testimony that seeks to address lay matters which the jury is capable of understanding and deciding without the expert's help is not relevant and is therefore inadmissible." *United States v. Jiau*, 734 F.3d 147, 154 (2d Cir. 2013) (internal quotations and brackets omitted). Here, for example, Crawford states that it "[i]t is my opinion that the failure of Bryan Stukes to drop the weapon when lawfully ordered to do so constituted an imminent threat to life or safety" and

that "[i]t is my opinion that the threat to life or safety was elevated when Bryan Stukes turned the weapon in the direction of Detective Borona and others in Golfinho's Fish Market." Doc. #155-1 at 9. If the jury is presented with evidence that Stukes failed to drop his weapon after being ordered to do so and that he turned the weapon in the direction of others, it is hard to see why the jury needs the help of an "expert" to decide if these actions posed an imminent threat to life and safety. *See generally United States v. Reddick*, 284 F. Supp. 3d 159, 162 (D. Conn. 2018) (discussing why a jury does not need an "expert" FBI agent to tell them that drug dealers often use guns and how "made-to-order expert testimony" is unfairly prejudicial when the expert's proposed testimony is crafted "to comment on inferences to be drawn from very specific factual permutations that happen to be presented in this case involving an out-of-home location of a firearm and a specific kind of drug (fentanyl) that was kept in the Toyota RAV4").

Detective Borona suggests that Crawford could permissibly testify about some portions of her report. Doc. #168 at 4-5. But he is vague and far from complete about just what Crawford would testify. It is not my responsibility to rummage through any potentially admissible remnants of Crawford's report in search of something Crawford might be qualified and allowed to say. Instead, the burden is properly on the defendants to do so: to disclose an expert report with conclusions that are limited in the first instance to what is at least arguably admissible and proper expert testimony. The vast majority of Crawford's report does not meet this threshold standard.

Accordingly, I will GRANT Gibbs's motion *in limine* to preclude the testimony of Kimberly Crawford. This ruling is without prejudice to defendants' filing within 30 days of a revised expert disclosure by Crawford that is limited to a statement of the qualifications, basis, and specific conclusions of expert testimony that are at least arguably proper subjects for expert

testimony. If the defendants choose to file a revised expert report, it shall be accompanied by a legal memorandum that explains (1) the basis for the Court to conclude that Crawford is qualified to testify as to each one of the proposed conclusions; (2) the basis in fact or expertise that Crawford has for each of the proposed conclusions; and (3) the ground for the Court to conclude that such testimony (a) is relevant to any disputed issue, (b) concerns matters beyond the ken of the average juror for which expert testimony would be helpful, and (c) has probative value that is not substantially outweighed by the potential for unfair prejudice. *See, e.g., United States v. Brown*, 871 F.3d 532, 537-38 (7th Cir. 2017) (discussing limited grounds for police expert testimony in excessive force cases).

The defendants' accompanying memorandum should identify any case law that has allowed the specific type of testimony proffered. It is not enough to string-cite cases (Doc. #168 at 2-3) that purportedly allow expert testimony about police practices without showing how these particular cases relate to the justification and the need for expert testimony here. If Crawford proposes to testify with reference to any of the facts of this case, the defendants' memorandum should explain why her opinions cannot be explained in a manner that does not involve her comment on and reference to the particular facts of this case.

If the defendants choose to file a revised expert disclosure and if Gibbs wishes to preclude the revised proposed expert testimony, then she may file a renewed motion *in limine* within 30 days of trial. If the defendants choose to file a revised expert disclosure, then Crawford shall promptly be made available for deposition at Gibbs's timely request.

### Motion to preclude re investigation and conclusions of the Connecticut State Police and the State's Attorney

Gibbs moves to preclude evidence, argument, and inference concerning the investigation, findings, conclusions, and reports of the Connecticut State Police and State's Attorney. Doc.

#156. Although the motion does not say much about the nature of such investigations and findings except to claim that they are biased and contain hearsay, I will assume that these reports and investigations reach conclusions that are unfavorable to Gibbs's case. In response to this motion, Detective Borona states that he does not intend to present evidence of the State's Attorney's investigation and conclusions or the investigative summary of the Connecticut State Police investigation. Doc. #168 at 5. The City's response does not specifically address the motion except to generally reserve the right to use police reports for traditionally proper purposes such as refreshing a witness's recollection or for cross-examination. Doc. #179.

Accordingly, I will GRANT Gibbs's motion *in limine* absent any grounds to show why the existence and results of investigations by the Connecticut State Police and State's Attorney are admissible in this case. This ruling does not preclude the introduction of otherwise admissible evidence (such as photographs) that may happen to have been generated during the course of such investigation provided that the parties and witnesses refrain—absent prior authorization from the Court upon a showing of necessity—from referring to the existence of such a separate investigation and the making of and content of any findings by the Connecticut State Police or the State's Attorney. Nor of course does this ruling bar the use of any investigative reports for otherwise proper purposes such as refreshing a witness's recollection or for cross-examination.

### *Motion to preclude evidence of Bryan Stukes's alleged intoxication*

Gibbs moves to preclude any evidence, argument, or inference concerning Bryan Stukes's alleged intoxication. Doc. #157. Gibbs argues that this evidence is not relevant and is unfairly prejudicial. I do not agree. I have reviewed the video of the fatal encounter that evening, and a reasonable juror could well draw an inference from Stukes's demeanor that he was

intoxicated. Given such an intoxicated state, a reasonable jury might conclude that Detective Borona (or any reasonably objective law enforcement officer) could have accounted for Stukes's intoxication in deciding whether he posed an imminent risk of harm. Evidence of intoxication may also be relevant as well to the state law defenses of comparative or contributory negligence. To the extent that the defendants wish to adduce evidence that Stukes was in fact intoxicated, this is proper to corroborate what Detective Borona might reasonably have perceived at the time of the incident. *See, e.g.*, *Hines v. Huff,* 2019 WL 3574246, at *4 (N.D.N.Y. 2019).

The probative value of intoxication evidence is not substantially outweighed by the possibility of unfair prejudice provided that any such evidence must be limited to intoxicants used by Stukes on the day or night of the encounter, as distinct from evidence of any prior use or history that Stukes may have had with intoxicants. Therefore, I will DENY Gibbs's motion subject to the limitations stated above. If Gibbs is concerned that the jury will consider any intoxication evidence for an improper purpose, then I will issue a limiting instruction provided that Gibbs submits a proposed instruction for me to review.

### *Motion to preclude evidence prior to encounter between Detective Borona and Stukes*

Gibbs moves to preclude any evidence, argument, or inference concerning events, incidents, or conduct occurring prior to the time that Detective Borona came to the door of the Golfinho Fish Market and first saw Bryan Stukes on the night of the fatal shooting. Doc. #158. Although Gibbs is correct that whether a use of force is reasonable must be evaluated by what an officer knew at the time of using force, *see O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003), that does not mean that the course of prior events may not inform what it is an officer knew or reasonably believed at the time of the incident in question. I have already ruled above, for example, that evidence of Stukes's intoxication is relevant and not necessarily unfairly

prejudicial. There is no basis for me to conclude as a categorical matter that any evidence prior to

when Detective Borona came to the door of Golfinho's Fish Market is not relevant.

Accordingly, I will DENY Gibbs's motion but without prejudice to Gibbs's filing within

30 days of another more targeted motion *in limine* that identifies and describes with particularity

any incidents, events, or other evidence arising prior to Detective Borona's encounter with

Stukes that she believes would be unfairly prejudicial or not relevant. *See Gibbs*, 2018 WL

4119588 at *1 n.1 (expressing doubt whether all of the events and interactions that occurred

earlier on the day of the encounter are relevant to issues at stake in this action).

### Motions to preclude evidence of prior uses of force, disciplinary history, and past lawsuits

The defendants move to preclude evidence of prior uses of force, disciplinary history, and

past claims or lawsuits against Detective Borona or the City. Doc. #159 (Part B); Doc. #162. In

light of Gibbs's representation that she does not intend to introduce or refer to such evidence

unless the defendants "open the door" to such evidence, the Court GRANTS the motions without

objection. If at some point Gibbs believes that the defendants have "opened the door" to such

evidence, Gibbs must consult with opposing counsel and the Court prior to seeking to introduce

or to refer to such evidence.

### Motion to limit the testimony of Anthony Davis

Detective Borona moves to preclude witness Anthony Davis from referring to another

alleged shooting incident involving Detective Borona or from offering his lay opinion about the

propriety of Detective Borona's use of force. Doc. #159 (Part C). Absent objection to this

motion, the Court GRANTS the motion with the understanding that counsel for Gibbs shall

instruct Davis that he may not make reference to such matters or otherwise volunteer information

and opinions that are not responsive to questions that he is asked at trial. To the extent that Gibbs

in her response memorandum suggests that the defendants should be precluded from questioning Davis about his interactions with Stukes earlier in the day of the shooting incident, Gibbs should file a separate motion *in limine* for such relief if warranted.

### *Motions to preclude autopsy photographs and autopsy report*

The defendants move to preclude the admission of autopsy and hospital photographs and for redaction of the autopsy report. Doc. #159 (Part D); Doc. #161. The Court GRANTS the motion as to any hospital photographs absent objection but otherwise DENIES the motions as to the autopsy photographs and autopsy report without prejudice subject to renewal at trial when the Court may view the documents at issue and to discuss with counsel the specific concerns that the defendants have raised.

### *Motion to preclude testimony about purported missed shot*

Detective Borona moves to preclude evidence about a shot that was supposedly fired by Detective Borona and that missed Stukes. Doc. #159 (Part E). In light of Gibbs's representation that she does not intend to introduce any such evidence unless the defendants "open the door" to such evidence, the Court GRANTS the motion without objection and subject to the understanding that, if Gibbs believes that the defendants have "opened the door" to such evidence, Gibbs shall consult with opposing counsel and the Court prior to seeking to introduce or refer to such evidence.

### *Motion to preclude impeachment of Detective Borona on the basis of alleged adverse credibility determinations in prior judicial decisions*

Detective Borona moves to preclude Gibbs from impeaching him on the basis of alleged adverse credibility determinations made against him in *Russo v. City of Bridgeport*, 479 F.3d 196 (2007), and *United States v. Calhoun*, 2017 WL 1078634 (D. Conn. 2007). Doc. #159 (Part F).

As a general matter, "a witness can be cross-examined based on prior occasions when his testimony in other cases had been criticized by a court as unworthy of belief." *United States v. White*, 692 F.3d 235, 248 (2d Cir. 2012). The Second Circuit has articulated "seven non-exhaustive factors for courts to consider in determining the probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief":

> (1) whether the prior judicial finding addressed the witness's veracity in that specific case or generally; (2) whether the two sets of testimony involved similar subject matter; (3) whether the lie was under oath in a judicial proceeding or was made in a less formal context; (4) whether the lie was about a matter that was significant; (5) how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; (6) the apparent motive for the lie and whether a similar motive existed in the current proceeding; and (7) whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible.

*Id.* at 249 (2d Cir. 2012) (internal quotations omitted). I have considered all these factors for both the *Russo* and *Calhoun* cases.

For the *Russo* case, I conclude that Gibbs may not impeach Detective Borona on the basis of this decision in light of the lengthy passage of time and the lack of an actual finding by a court that Detective Borona was not credible (as distinct from a description by the court of plaintiff's claims of misrepresentations which were credited only for purposes of a summary judgment motion). Impeachment about the the *Russo* decision would be of little probative value and with a danger of unfair prejudice and confusion of the issues at stake in this case.

I reach a different conclusion for the *Calhoun* case. Its recency and the fact that there was an explicit judicial determination that Detective Borona was not credible under oath are the primary factors that warrant allowing Gibbs to impeach Detective Borona with this adverse judicial finding.

The *Calhoun* case involved a suppression hearing concerning Detective Borona's warrantless entry into a defendant's home, and Detective Borona testified at the hearing that "[a]t

that point I believed that there possibly was someone inside the house that was shot or otherwise injured from the incident at CVS, and we had exigency to breach the home."[1] Judge Underhill granted the defendant's suppression motion, ruling in part that "I do not find Borona's claim that he believed there was a real emergency requiring forced entry to be credible."  2017 WL 1078634, at *2 n.8. Judge Underhill further stated that "I find that Borona's statement that he subjectively believed exigency existed was not credible," and concluded that the breach of the home was a "bad faith violation of the Fourth Amendment." *Id.* at *8.

Although Detective Borona attempts to recast Judge Underhill's findings as no more than a disagreement as to a "legal conclusion" about whether the circumstances "triggered the emergency aid exception to the warrant requirement," Doc. #159 at 27, Judge Underhill's findings are best understood to mean that he believed that Detective Borona lied about a factual matter when he testified that he believed there was an injured person inside the home in need of emergency assistance. This interpretation is most consistent with Judge Underhill's conclusion that there was a bad faith violation of the Fourth Amendment rather than an innocent or reasonable misunderstanding about what the law allows. "A finding that a witness is not credible is not fundamentally different from a finding that the witness lied. It often just reflects a fact finder's desire to use more gentle language." *White*, 692 F.3d at 249.

Accordingly, I will GRANT Detective Borona's motion to preclude impeachment on the basis of the *Russo* decision but will DENY Detective Borona's motion to preclude impeachment on the basis of Judge Underhill's adverse credibility findings in the *Calhoun* decision. As to the *Calhoun* decision, I find that the balance of the *White* factors weighs heavily in Gibbs's favor

---

[1] This testimony appears in the transcript to the suppression hearing. *See* Doc. #60 at 55 to *United States v. Calhoun*, 3:16-cr-00092-SRU (D. Conn).

and I find that the probative value of such impeachment is not substantially outweighed by the

danger of unfair prejudice or confusion of the issues.

### Motion to preclude evidence or argument about Black Lives Matter or nationally publicized claims of police misconduct

Detective Borona moves to preclude testimony, evidence, argument, or comment on the

Black Lives Matter movement or any other nationally publicized instances of alleged police

misconduct. Doc. #159 (Part G). Although Gibbs opposes this motion, she does not explain how

evidence about or references to the Black Lives Matter movement or any other instances of

alleged police misconduct not involving Detective Borona are relevant to this action and how

such evidence or argument would not create a danger of unfair prejudice and confusion of the

issues.

Absent any particularized showing by Gibbs of what evidence or argument she would

introduce concerning the Black Lives Matters movement or other nationally publicized instances

of alleged police misconduct, I conclude that such evidence is not relevant and that any probative

value is substantially outweighed by the danger of unfair prejudice and confusion. *See Kellom v.

Quinn*, 2019 WL 4187353, at *12-13 (E.D. Mich. 2019) (precluding evidence and reference to

Black Lives Matter and unrelated police shootings). To the extent that Gibbs complains that she

should be allowed to introduce such evidence or argument in order to compensate for evidence

about crime or law enforcement training that is unfairly favorable to the police, her remedy is to

seek the preclusion or limitation of such evidence rather than to introduce otherwise improper

evidence or argument on a "two wrongs makes a right" theory of admissibility.

Accordingly, I will GRANT Detective Borona's motion *in limine* without prejudice. This

ruling does not preclude any evidence that Detective Borona in particular acted for reasons

related to Stukes's race or any good faith argument or impeachment on such grounds specific to

Detective Borona. Such individual-specific motivation could shed light on any evidence that Detective Borona departed from the objective Fourth Amendment reasonableness standard or from the state law standards of care.[2]

### *Motion to preclude previously undisclosed witnesses*

The City moves to preclude the testimony of five witnesses who were identified by Gibbs in the joint trial memorandum but not previously disclosed as trial witnesses: Clive Higgins, Bishop Venoal Fountain, Marcia Fountain, Roosevelt Fludd, and Maria Antunes. Doc. #163.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) states that, in general, "a party must, without awaiting a discovery request, provide to the other parties: the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Rule 37(c)(1) in turn provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Rule 37 goes on to state that the Court may supplement or substitute this sanction with any "other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C). In deciding whether to exclude evidence under Rule 37(c)(1), the Second Circuit instructs district courts to consider "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a

---

[2] Gibbs seeks leave to submit additional proposed *voir dire* questions concerning potential bias. All parties are welcome to submit additional *voir dire* questions relating to whether the circumstances of this action involving a shooting of a Black person by a White police officer would affect any juror's ability to be fair and impartial.

result of having to prepare to meet the testimony; and (4) the possibility of a continuance."

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (brackets omitted).

Although it is regrettable that Gibbs did not earlier disclose these witnesses, I conclude that the reasons for non-disclosure do not suggest bad faith and that the sanction of preclusion would be too severe in light of the ample time remaining before trial next October and in light of the relatively minor testimony to be adduced from these witnesses. Accordingly, I will DENY the City's motion to preclude these witnesses subject to Gibbs's representation that each one of these witnesses shall promptly be made available for deposition upon the defendants' timely request.

## CONCLUSION

For the reasons stated above, the Court rules as follows on the pending motions *in limine* subject to the limitations and understandings stated in this ruling:

- The Court GRANTS without prejudice the motion to preclude the testimony of Kimberly Crawford (Doc. #155);

- The Court GRANTS the motion to preclude the investigation, findings, conclusions, and reports of the Connecticut State Police and State's Attorney with respect to the death of Byran Stukes (Doc. #156);

- The Court DENIES the motion to preclude evidence or argument about the alleged intoxication of Bryan Stukes (Doc. #157);

- The Court DENIES the motion to preclude any evidence or argument about any events or evidence arising prior to the time that Detective Borona came to the door of the Golfinho Fish Market and saw Bryan Stukes on the night of the fatal shooting (Doc. #158);

- The Court GRANTS the motions to preclude evidence or argument about prior uses of force, disciplinary history, and past claims or lawsuits against Detective Borona or the City of Bridgeport (Doc. #159 (Part B), Doc. #162);

- The Court GRANTS the motion to preclude Anthony Davis from referring to another alleged shooting incident involving Detective Borona or from offering his lay opinion about the propriety of Detective Borona's use of force (Doc. #159 (Part C));

- The Court GRANTS the motion to preclude hospital photographs and DENIES without prejudice the motions to preclude autopsy photographs and the autopsy report (Doc. #159 (Part D), Doc. #161);

- The Court GRANTS the motion to preclude evidence about a shot that was supposedly fired by Detective Borona and that missed Bryan Stukes (Doc. #159 (Part E));

- The Court GRANTS in part and DENIES in part the motion to preclude impeachment of Detective Borona on the basis of prior adverse credibility determinations (Doc. #159 (Part F));

- The Court GRANTS the motion to preclude evidence and argument about the Black Lives Matter movement or any other nationally publicized instances of alleged police misconduct (Doc. #159 (Part G));

- The Court DENIES the motions to preclude the testimony of five previously undisclosed witnesses (Doc. #163).

If any party believes that there has been an error or misunderstanding with respect to the Court's rulings on the pending motions, they are invited to promptly file a motion for reconsideration or clarification.

It is so ordered.

Dated at New Haven this 29th day of March 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge