UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MELISSA GIBBS, Administratrix** | : | **CIVIL ACTION NO.** |
| **The Estate of Bryan Stukes** | : | **16cv00635 (JAM)** |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| **CITY OF BRIDGEPORT, ET AL.,** | : | |
| | : | |
| Defendants. | : | **OCTOBER 9, 2021** |

## PLAINTIFF'S MOTION TO INFORM THE JURY THAT THE RIFLE WAS NOT LOADED

The plaintiff hereby moves the Court to inform the jury, or allow the plaintiff to inform the jury, that the rifle was not loaded during the incident that led to Bryan Stukes' death. The reasons the jury must be informed of this undisputed fact are as follows:

1. This fact goes to Bryan's comparative negligence. It is much more negligent to carry a loaded weapon around the streets of Bridgeport than it is to carry an unloaded weapon. It is much more negligent to threaten Anthony Davis and, allegedly, Detective Borona with a loaded weapon than with an unloaded one. Carrying and brandishing a loaded weapon is much more likely to result in bad things happening, including a use-of-force by the police, than carrying a weapon that actually has no ability to hurt anyone.

2. If the rifle were loaded at the time Bryan Stukes possessed it, no doubt the jury would be told that. It would not even be a topic of discussion. The same rule should apply to an unloaded rifle.

1

3. The jury will assume the rifle was loaded.  This is unduly prejudicial to the plaintiff.  If the Court and the parties have the ability to prevent the jury from believing and basing their deliberations on erroneous and prejudicial assumptions, they must act to do that.

4. The defendant's lawyers have stated they believe that Bryan's possession of the gun says much about his future prospects, his character, and his life.  If the jury is permitted to assume that the rifle was loaded, it will use that erroneous assumption as evidence of Bryan's bad character.  The jury will use it to assess Bryan's past and future life.  It will use it to diminish Bryan's damages.

5. The fact that Bryan may have pointed an unloaded gun at Anthony Davis and at Detective Borona is a fundamentally different act when one knows that there was no possibility of him hurting either of them or anyone else.

6. Bryan actually had no ability to shoot Anthony Davis or Borona or anyone else.  Bryan knew that, and that fact undoubtedly influenced his actions, including his decision to carry the rifle at all and his decision to confront Davis on the street.  These issues are directly relevant to the defendant's claim of comparative negligence.

7. Anthony Davis may have known that the gun was unloaded, which would account for his behavior when confronted.  His words ("Shoot me. Shoot me.") and his demeanor (confronting Bryan, yelling at him, not backing down) show that he plainly did not feel threatened by Stukes.  This renders the entire confrontation less violent.  It clarifies that it was, in fact, a stupid confrontation between two people who

knew each other – one who had no intention to do real harm, and the other with no fear harm would be done.

8. Since the rifle was unloaded, Bryan may not have even committed the misdemeanor of Threatening in the Second Degree.  *See* Conn. Gen. Stat. 53a-62 (a person is guilty of threatening in the second degree "when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2)(A) such person threatens to commit any crime of violence with the intent to terrorize another person, or (B) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror….").  A person cannot "physically threaten" or "intentionally place a person in fear of imminent serious physical injury" with an unloaded rifle if both the person and the supposed victim know the rifle poses no threat at all.

9. Bryan can't speak for himself.  If he were alive, he would be able to say the rifle was not loaded.  It would be relevant to the entire event and to all claims and defenses in the case.  The calculus is not and should not be different when the evidence is already skewed to Borona's advantage because Bryan is not here to testify.

10. There is **no prejudice to Detective Borona** from informing the jury of the actual facts because he can and will say that he reasonably believed the rifle was loaded, and there is no evidence or argument to the contrary.

Wherefore, the plaintiff moves the Court to inform the jury, or allow the plaintiff to inform the jury, that the rifle was not loaded during the incident that led to Bryan Stukes' death.

3

RESPECTFULLY SUBMITTED,

THE PLAINTIFF,

/s/_____
Antonio Ponvert III, Esq. (ct17516)
Douglas P. Morabito, Esq. (ct20962)
Koskoff Koskoff & Bieder, PC
350 Fairfield Avenue
Bridgeport, Connecticut 06604
Tel:  203-336-4421
Fax: 203-368-3244
Email: aponvert@koskoff.com
           dmorabito@koskoff.com

**CERTIFICATION**

I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/
Antonio Ponvert III, Esq.