UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MELISSA GIBBS,
*Administratrix of Estate
of Bryan Stukes,*
    *Plaintiff*,

v.

CHRISTOPHER BORONA*,
    Defendant*.

No. 3:16-cv-00635 (JAM)

## ORDER RE MOTIONS *IN LIMINE* #206, #207, #208

    This case involves federal and state law claims arising from a fatal shooting by the police in Bridgeport, Connecticut. In this ruling I address some of the parties' recent motions *in limine* (Docs. #206, #207, #208) with respect to evidence, examination, and argument at trial.

### BACKGROUND

    On the night of April 1, 2013, Detective Christopher Borona of the Bridgeport police department shot and killed a young man named Bryan Stukes. *See Gibbs v. City of Bridgeport*, 2018 WL 4119588, *1–4 (D. Conn. 2018) (describing factual background). Plaintiff Melissa Gibbs is Stukes's mother, and in her capacity as administratrix of his estate she has filed this lawsuit against Detective Borona.

    The case is scheduled for jury trial to begin this week. The claims against Detective Borona include one count under 42 U.S.C. § 1983 for the use of excessive force in violation of the Fourth Amendment as well as one count for negligent wrongful death in violation of Connecticut state law.

### DISCUSSION

    The parties have filed motions *in limine*, and I will address each one in turn. By way of background, I note that most of the motions seek preclusion of evidence or argument on the

1

ground that such evidence or argument is not relevant or unfairly prejudicial. Rule 402 of the Federal Rules of Evidence allows for the admission of relevant evidence, and Rule 401 in turn defines evidence to be "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence," and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. In addition, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### *Plaintiff's motion to preclude testimony of Captain Kevin Gilleran*

Gibbs moves to preclude the testimony of Captain Kevin Gilleran. In response to this motion, Detective Borona has narrowed the proposed testimony to the following: (1) Captain Gilleran's background and that he was in charge of the Bridgeport police department's firearms training when it transitioned its officers in 2012 to the firearm used by Borona on the day of the incident; (2) the training regimen, which included field and classroom instruction, that Borona took part in; (3) how the training regimen compared to that mandated by the Police Officer Standards and Training Council ("POST"); and (4) Borona's participation in the training.[1]

Defense counsel made clear at oral argument on the motion that he intended to elicit from Captain Gilleran the fact that the training regimen included training on the use of deadly force but that he did not intend to elicit from Captain Gilleran the substance of any instruction received apart from the police department's use of force policy. Defense counsel further represented that Captain Gilleran will not comment on the evidence in this case or be prompted to opine about hypothetical fact patterns resembling it.

---

[1] Doc. #209 at 3.

I will overrule Gibbs's motion to preclude in light of the narrowed scope of the proposed testimony. Although internal police training standards do not themselves define what is reasonable under the Fourth Amendment, the weight of authority suggests that the fact that Detective Borona received training in the use of his weapon is nonetheless relevant among other factors to the jury's overall consideration of whether Detective Borona's actions were objectively reasonable under the Fourth Amendment and whether they were negligent under state law.[2]

Captain Gilleran is a fact witness to the extent that he testifies about the training Detective Borona received. To the extent that Captain Gilleran may testify in part on the basis of his qualified expert knowledge about the firearm used by Detective Borona and the scope of training, I conclude that these subjects are appropriate for expert testimony under Fed. R. Evid. 702 because they are beyond the ken of the average juror and would be helpful to the jury's consideration of the context of evidence presented.

---

[2] *See, e.g., Turner v. City of Champaign,* 979 F.3d 563, 568 (7th Cir. 2020) ("[P]olice training policies and best practices, *while relevant*, do not define what is reasonable under the Fourth Amendment.") (emphasis added); *Jennings v. Jones*, 499 F.3d 2, 19–20 (1st Cir. 2007) ("testimony about the training that officers receive and the Use of Force Continuum is relevant" to whether force was excessive under the Fourth Amendment and qualified immunity); *Williams v. Haure,* 2020 WL 1043449, at *2 (W.D. Wis. 2020) (noting that "whether defendants went through training related to the use of force, spit masks and suicide prevention may have some bearing on whether their conduct towards Williams was objectively unreasonable" and "[w]hile it is well-established that policy violations do not necessarily establish a constitutional violation, that principle does not render defendants' training and the jail policies related to these issues irrelevant to Williams' excessive force claims"); *Mighty v. Miami-Dade Cty.*, 2019 WL 4306917, at *3 (S.D. Fla.) ("I conclude that testimony from Captain Knapp regarding the training and procedures of the Miami-Dade Police Department and Robbery Intervention Detail unit is relevant to whether Officer Carballosa's actions on the night in question were objectively reasonable."), *report and recommendation adopted*, 2019 WL 4305847 (S.D. Fla. 2019); *State v. Smith*, 73 Conn. App. 173, 196 (2002) (evidence of officer's "training and police training in general regarding the use of deadly force" was "highly relevant to establishing that [officer's] use of deadly force was objectively reasonable according to the 'reasonable police officer' standard"). In addition, apart from the issue of Detective Borona's training, the parties have agreed on the relevance and admission of the police department's use-of-force policy. *See Brown v. City of New York*, 798 F.3d 94, 101 n.11 (2d Cir. 2015) ("[T]he Supreme Court in *Tennessee v. Garner*, 471 U.S. 1 (1985), considered police regulations of several jurisdictions in making a constitutional ruling on excessive force, and regulations of a single department have also been considered relevant to a constitutional ruling on excessive force."); *Ludwig v. Anderson*, 54 F.3d 465, 472 (8th Cir. 1995) ("Although police department guidelines do not create a constitutional right, they are relevant to the analysis of constitutionally excessive force.").

*Plaintiff's motion to preclude audio of 911 call*

Gibbs moves to preclude Exhibit 501 to the extent that it includes an audio recording of the 911 call placed by Anthony Davis that has been synchronized (or "synced") with the three-camera video. As an initial matter, I conclude that the 911 audio is not barred by the rule against hearsay, because the statements on the audio are either not offered for the truth of the matters asserted or they qualify under the hearsay exceptions for "present sense impressions" under Fed. R. Evid. 803(1) and "excited utterances" under Fed. R. Evid. 803(2). *See United States v. Thomas*, 2014 WL 2168468, at *4–5 (D. Conn. 2014)*.

Rather than raising any hearsay objection, Gibbs argues that the 911 audio is not relevant because Detective Borona was not a party to the 911 call and could not hear what was being said on the call. Detective Borona responds that the 911 call is nonetheless relevant to his defense of comparative negligence insofar as it shows that Stukes engaged in and continued his menacing conduct even after he was aware that Davis was calling the police for protection.

I conclude that the 911 call is relevant to the issue of comparative negligence from the beginning of the audio of the call at 9:46:20 up until the point when Borona emerged from the store and twice shot at Stukes before looking down at the weapon on the ground at 9:48:36 (just prior to when Davis says "thank you, officer!"). Portions of the video beginning from approximately 9:44:20 (in the two minutes immediately preceding the start of the audio of the 911 call at 9:46:20) show what the jury might conclude is Stukes far down Benham Street engaging in an altercation and threatening conduct with a rifle on the sidewalk and in the street, despite apparent efforts by his girlfriend to restrain him. This type of conduct is relevant to the jury's consideration of whether Stukes was comparatively negligent by engaging in conduct in public that a reasonable person could believe would prompt a police response and the use of

4

force by the police. Davis's statements on the 911 call describing what had just happened are likewise relevant to the jury's consideration of whether Stukes was comparatively negligent.[3]

I further conclude that the probative value of this portion of the 911 audio (from 9:46:20 to 9:48:36) is not substantially outweighed by any potential unfair prejudice. In light of Detective Borona's express disclaimer that "the 9-1-1 audio is not being presented as something that bore on Borona's state of mind just before firing the challenged shot,"[4] I will instruct the jury upon introduction of the 911 audio that they may consider the audio solely for the purpose of evaluating whether Stukes was comparatively negligent.[5]

As to the statements made on the 911 call after 9:48:36, there has been no showing how they have any bearing on the issues of what Detective Borona knew at the time that he shot at Stukes or as to the issue of comparative negligence. These later statements—such as Davis's statement thanking Detective Borona—are not relevant and any probative value from later stray remarks heard on the audio would be substantially outweighed by the risk of unfair prejudice.

Accordingly, I will grant in part and deny in part Gibbs's motion to preclude the 911 audio. I will allow the admission of only a portion of the 911 audio from 9:46:20 to 9:48:36 as reflected on the synchronized video. Detective Borona may adduce the fact that the 911 call was placed by Anthony Davis and has been synchronized to the video.

---

[3] I do not agree with Gibbs that Detective Borona's briefing "concedes that the portion of the 911 call made outside the presence of Bryan Stukes is inadmissible." Doc. #210 at 6 n.3. Detective Borona's briefing argues that the 911 call is generally "relevant to his comparative negligence defense" and that the fact that "Stukes was aware that Davis was communicating with 9-1-1 provides an *additional* basis" for a finding of comparative negligence. Doc. #207 at 7 (emphasis added).

[4] Doc. #207 at 8.

[5] To the extent that I previously ruled at summary judgment that "[i]t is undisputed that Detective Borona was neither privy to nor learned at the time what Davis was telling the dispatcher," Doc. #117 at 3 n.2, this did not foreclose the parties from arguing any other basis for relevance of the 911 audio of the conversation between Davis and the police dispatcher or any of the background sounds heard during the telephone call. If either party has grounds to suggest any additional grounds for relevance of the 911 audio (other than as to the issue of comparative negligence), they should raise this issue with me before the start of trial.

*Plaintiff's motion to preclude certain photographs*

Gibbs moves to preclude certain photograph exhibits (Exhs. 506, 507, 508) on the ground that they are too dark to constitute a fair and accurate representation of the actual street scenes proximate to the shooting. I have examined the photographs, and in the absence of any claim that the photographs have been altered for distortion purposes, I will deny as premature the motion to preclude without prejudice to renewal at trial in the absence of an adequate foundation for their admission.

*Plaintiff's motion to preclude statements of Officers Quintanilla and Esquilin*

Gibbs moves to preclude certain statements made by Officers Quintanilla and Esquilin as reflected in a police department memorandum (Exh. 510). Based on Detective Borona's representation that he does not intend to offer this memorandum as a trial exhibit (as distinct from using it for impeachment or to refresh any witness's recollection), I will deny the motion to preclude as moot.

*Plaintiff's motion to preclude medical examiner toxicology report*

Gibbs moves to preclude a medical toxicology examiner report (Exh. 512) which reflects an alcohol level for Stukes. I understand from counsel at oral argument that this motion is now withdrawn.

*Plaintiff's motion to preclude criminal history and school records*

Gibbs moves to preclude proposed trial exhibits that detail Stukes's criminal conviction history and his school report cards from 2006 to 2009 (Exhs. 513, 514). Detective Borona argues that these records are relevant to any calculation of damages for lost enjoyment of life. I do not see how prior crimes or poor grades in school signify that Stukes would have enjoyed his future life any less than another person. Any marginal probative value of these records is well

outweighed by the likelihood of unfair prejudice if the jury were to learn about Stukes's prior conviction history and about his failing grades at school.

I am particularly concerned that these records might induce the jury to devalue the worth of Stukes's life in a manner that could warp their judgment about whether Detective Borona violated his constitutional rights or negligently caused his death. Accordingly, I will preclude these records and argument or cross-examination on the basis of these records unless Gibbs opens the door to such information, in which case counsel for Detective Borona should seek a sidebar for reconsideration of this ruling.

### *Plaintiff's motion to preclude evidence of threatening statute*

Gibbs moves to preclude a trial exhibit (Exh. 515) that sets forth the text of Conn. Gen. Stat. § 53a-61aa (Threatening in the First Degree). Although Gibbs argues that the statute is irrelevant to any claim or defense in this case, it is relevant to the police department's use-of-force policy which the parties have mutually agreed should be an exhibit (Exh. 511). That policy conditions in part the use of deadly force on whether "the officer reasonably believes [the person] has committed or attempted to commit a felony that involved the infliction or threatened infliction of serious physical injury." Gibbs should not be permitted to argue that Detective Borona used force in a manner at odds with his department's policy but then prevent Detective Borona from trying to show that his use of force was justified under that policy. Accordingly, because the parties have agreed that the use-of-force policy is relevant and admissible, the statute is also relevant, and I will allow a copy of the statute (along with the additional statute it incorporates, Conn. Gen. Stat. § 53a-62) to be admitted as an exhibit at trial.

*Defendant's motion to preclude testimony of Acting Police Chief Garcia*

Detective Borona moves to preclude the testimony of Acting Police Chief Garcia. Because it is not yet apparent that Acting Chief Garcia's testimony will be necessary, I will hold the motion under advisement pending the testimony of Detective Borona.

*Defendant's motion to preclude his deposition*

Detective Borona moves to preclude the introduction as a trial exhibit of his entire deposition (Exh. 4). Because Gibbs states that he does not intend to use the deposition except for impeachment and possibly to introduce portions of the deposition following the testimony of Detective Borona, I will deny the motion to preclude the entire deposition as moot.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part the parties' motions *in limine* (Docs. #206, #207, #208). If any party believes that there has been an error or misunderstanding with respect to the Court's rulings on the pending motions, they are invited to promptly file a motion for reconsideration or clarification.

It is so ordered.

Dated at New Haven this 11th day of October 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge